**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALICE STEEL, individually and as Special Administrator of the Estate of PIERRE STEEL, deceased, and DEMARCO WHITLEY, | )<br>)<br>)<br>) | |
| | ) | 11 C 00460 |
| Plaintiffs, | )<br>) | Honorable Edmond E. Chang |
| v. | )<br>) | |
| FORD MOTOR COMPANY, TK HOLDINGS, INC., AUTOLIV ASP, INC., and AL PIEMONTE FORD SALES, INC., | )<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Ford Motor Company, with the consent of the other then-pending defendants, removed this personal injury case from state court, invoking diversity jurisdiction. Plaintiffs wish to return to state court and have moved to remand, R. 15, arguing that diversity jurisdiction does not apply because of the presence of a non-diverse defendant at the time of the complaint's filing in state court. After reviewing the parties' submissions, the Court denies the motion to remand because, at least based on the current record, there is no reasonable possibility that the non-diverse defendant will return to the case.

**I.**

In January 2010, Pierre Steel and Demarco Whitley were in a car accident which resulted in the death of Steel and injuries to Whitley. R. 15, Exh. A (Compl.) ¶¶ 15-16, 19. The complaint alleges that the front and side air-bags did not deploy. *Id.* ¶ 18. In

Illinois state court, Steel's mother and Whitley sued the maker of the car, Ford Motor Company, as well as the manufacturer of the air-bag "modules," TK Holdings, Inc. (also known as Takata), and the manufacturer of the "sensor assemblies" and the "restraints control module," Autoliv ASP, Inc. *Id.* ¶¶ 6-8. Plaintiffs also sued the local car dealership that sold the car, Al Piemonte Ford Sales. *Id.* ¶¶ 9, 14.

Ford removed the case to federal court. The notice of removal alleged that Plaintiffs are Illinois citizens and specified the citizenships of Ford, Takata, and Autoliv, none of which are Illinois citizens. R. 1 ¶¶ 3-6.[1] The notice did acknowledge, however, that the principal place of business of Piemonte Ford (the local car dealership) was located in Illinois. *Id.* ¶ 7.

## II.

### A.

In light of Piemonte Ford's initial presence in the state-court complaint, Plaintiffs moved to remand, arguing that removability must be examined not only at the time of removal, but also at the time of the complaint's filing. *See Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004) (diversity must exist at both times); *see also* Wright & Miller, Federal Practice & Procedure § 3723 at 696 (4th ed. 2009). Ford contends that Piemonte Ford, like a jurisdictional null set, must be disregarded for purposes of determining diversity jurisdiction because Plaintiffs voluntarily dismissed Piemonte Ford. Whether the dismissal was voluntary or

---

[1] The notice specified Ford's citizenship as Delaware and Michigan, the same for Takata, and Autoliv as Indiana and Utah. R. 1 ¶¶ 4-6.

2

involuntary is important because if a non-diverse defendant was voluntarily dismissed from a state-court complaint, then the case is thereafter "removable," as that term is used in 28 U.S.C. § 1446(b), to federal court after the order dismissing the non-diverse defendant. *Poulos v. Naas Foods*, 959 F.2d 69, 72 (7th Cir. 1992). But if the dismissal was involuntary, then the case is not, absent some other route, removable. *Id.*

*Poulos* explained the rationale for the distinction: federal courts fear that an involuntary dismissal "may be only temporary: the plaintiff may appeal the dismissal in state court, and success on appeal would lead to reinstatement of the non-diverse party, destroying federal jurisdiction and compelling remand to the state court." *Id.* at 72. (Denying joinder in that situation is a possibility, 28 U.S.C. § 1447(e), but could result in splitting claims and defendants that should otherwise be joined across the federal and state court systems.) In addition to avoiding the "yo-yo effect" of remanding a case to federal court after the re-appearance of a non-diverse defendant, the voluntary-involuntary distinction also is consistent with the general deference given to a plaintiff's choice of forum. *Poulos*, 969 F.2d at 72. The Seventh Circuit noted that there is some tension between forum-choice deference and the apparent purpose of removal, namely, to allow a defendant "to escape the plaintiff's hometown forum," but the deference was consistent with the "general desire to limit federal jurisdiction." *Id.*

Here, Ford argues that the dismissal of the local car dealership, Piemonte Ford, was voluntary because Plaintiffs did not object to Piemonte Ford's motion to dismiss and did not appeal the dismissal. To understand this issue, it is necessary to examine

3

the statute that Piemonte Ford invoked to win the dismissal. In an Illinois product liability action, a defendant that did not manufacture the product may file an affidavit certifying the correct identity of the manufacturer. 735 ILCS 5/2-621(a). Once the plaintiff has sued the manufacturer and the manufacturer is ordered to answer or otherwise plead, then the court "shall" order the dismissal of the certifying defendant. § 2-621(b). The exceptions to dismissal are based on some level of culpability on the certifying defendant's part:

> (c) A court shall not enter a dismissal order relative to any certifying defendant . . . other than the manufacturer even though full compliance with subsection (a) of this Section has been made where the plaintiff can show one or more of the following:
>
>> (1) That the defendant has exercised some significant control over the design or manufacture of the product, or has provided instructions or warnings to the manufacturer relative to the alleged defect in the product which caused the injury, death or damage; or
>>
>> (2) That the defendant had actual knowledge of the defect in the product which caused the injury, death or damage; or
>>
>> (3) That the defendant created the defect in the product which caused the injury, death or damage.

§ 2-621(c)(1)-(3).

There are also grounds to re-instate the certifying defendant "provided plaintiff can show one or more of the following":

> (1) That the applicable period of statute of limitation or statute of repose bars the . . . cause of action against the manufacturer . . . of the product . . .; or
>
> (2) That the identity of the manufacturer given to the plaintiff by the certifying defendant . . . was incorrect. Once the correct identity of the manufacturer has been given by the certifying defendant . . . the court shall again dismiss the certifying defendant . . .; or

4

(3) That the manufacturer no longer exists, cannot be subject to the jurisdiction of the courts of this State, or, despite due diligence, the manufacturer is not amenable to service of process; or

(4) That the manufacturer is unable to satisfy any judgment as determined by the court; or

(5) That the court determines that the manufacturer would be unable to satisfy a reasonable settlement or other agreement with plaintiff.

§ 2-621(b)(1)-(5).

With that statutory background in mind, Ford characterizes Piemonte Ford's dismissal as voluntary because Plaintiffs did not object to the dismissal. Plaintiffs opposed the motion, but only on the grounds that Piemonte Ford had not filed an affidavit certifying the correct identity of the air-bags' and related systems's manufacturers. R. 15, Exh. D. In reply, Piemonte Ford filed the certifying affidavit (in addition to arguing that the affidavit was unnecessary because Plaintiffs' complaint itself identified the manufacturers). *Id.*, Exh. E. As Plaintiffs themselves acknowledge, at that point Plaintiffs "informed the court that it would not object to the order characterizing the court's dismissal as without prejudice." R. 15 at 5. Ford seizes on this non-objection as the equivalent of a voluntary dismissal.

To be sure, the absence of a basis to resist Piemonte Ford's § 2-621 motion will factor into the fraudulent joinder analysis (see *infra* § II.B), but for purposes of the voluntary/involuntary distinction, Plaintiffs did not take any of the sorts of actions that have been deemed to be voluntary in the cases cited by Ford, *see* R. 17 at 2-3, such as dismissing a defendant through a settlement agreement or failing to serve a named non-diverse defendant. Plaintiffs did not initiate or affirmatively agree to the

5

dismissal; no doubt if Piemonte Ford had not moved for dismissal, Plaintiffs would have happily continued to litigate against the car dealership and seek to hold it strictly liable as a distributor (not manufacturer) of the car. And although Ford points to the absence of an appeal by Plaintiffs, here the absence does *not* speak volumes because § 2-621 dismissals are not final, appealable orders under Illinois law. *See Kellerman v. Crowe*, 518 N.E.2d 116, 118 (Ill. 1987). Thus, the dismissal of Piemonte Ford was involuntary for purposes of the diversity jurisdiction inquiry.

**B.**

Ordinarily, the involuntary dismissal of the non-diverse defendant would render removal improper. "But there is one more route to removal." *Poulos*, 959 F.2d at 73. Specifically, where defendants can show that the "joinder" of the non-diverse defendant was "fraudulent" – put another way, that "fraudulent joinder" applies – then federal courts will disregard the non-diverse defendant for purposes of determining whether diversity jurisdiction exists. *Id.*[2] *Poulos* instructs that an out-of-state defendant bears a "heavy burden" in showing fraudulent joinder, specifically, that there is no "reasonable possibility" of prevailing against the non-diverse defendant:

> The defendant must show that, after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant. . . . At the point of decision, the federal court must engage in an act of prediction: is there any reasonable possibility that a state court

---

[2] As the Seventh Circuit explained, "fraudulent" is a term of art in this context, and not intended to pejoratively characterize the plaintiff's state of mind in the usual sense of the term "fraudulent." *Poulos*, 959 F.2d at 73. Indeed, "joinder" too is not necessarily precise because the doctrine applies whether or not the non-diverse defendant was later "joined" after the initial filing of the complaint, or instead was sued in the initial complaint.

6

would rule against the non-diverse defendant? If a state court has come to judgment, is there any reasonable possibility that the judgment will be reversed on appeal?

959 F.2d at 73 (emphasis in original); *see also Schwartz v. State Farm Mut. Auto Ins.*, 174 F.3d 875, 878-89 (7th Cir. 1999) (applying "reasonable possibility" test).

In applying the reasonable possibility test, *Poulos* considered whether the plaintiff there had fraudulently joined the parent corporation (RHM) of a food dealership (Naas Foods). RHM was the non-diverse defendant and had won summary judgment in Wisconsin state court, which prompted the removal to federal court. The Seventh Circuit examined the complaint, which made no allegation of impropriety or other reason to disregard the corporate form. 959 F.2d at 74. The complaint also did not allege that the assets of the subsidiary would be insufficient to satisfy a judgment (another possible basis to disregard the corporate form). *Id.* And in response to the plaintiff's argument that "some facts might turn up to support a claim" against the parent, the Seventh Circuit held that the defendant "need not negate any possible theory that [the plaintiff] might allege in the future: only his present allegations count." *Id.*

Measured against this standard, Piemonte Ford was fraudulently joined.[3] When Piemonte Ford moved to dismiss in state court under § 2-621, Plaintiffs' sole argument in response was that Piemonte Ford had not filed a certifying affidavit. R. 15, Exh. D.

---

[3]The Court again emphasizes that the term is being used as it is defined in the context of diversity jurisdiction, not as a characterization of Plaintiffs' or Plaintiffs' counsel's motives. *See supra* n.2.

7

Piemonte Ford filed the affidavit, R. 15, Exh. E, and then Plaintiffs did not object to entry of the dismissal order so long as it was without prejudice. If any of the § 2-621(c) grounds applied (the ones having to do with defendants with some culpability for the product), then Plaintiffs could have attempted to make that showing and resisted the dismissal order. § 2-621(c) (the court "the shall not enter a dismissal . . . where the plaintiff can show" one of the listed grounds). Plaintiffs did not. Nor does the complaint contain any allegation against Piemonte Ford on one of the § 2-621(c) grounds.

In the motion to remand, Plaintiffs did not allege that any § 2-621(c) ground applies, and only argued that Piemonte Ford might re-appear in the case "[i]f, for example, Ford went bankrupt, the Plaintiff would be able to reinstate Al Piemonte as a matter of right." R. 15 at 7. The argument that Plaintiffs might be unable to recover on a judgment is a reference to § 2-621(b)(4), which provides that a plaintiff may move to reinstate a certifying defendant if the manufacturer is unable to satisfy a judgment. In the reply brief, there is only this additional argument: Plaintiffs write in one sentence that § 2-621 "does not grant non-manufacturers absolute immunity, and Al Piemonte is subject to reinstatement at any time before judgment if Plaintiffs can show that it had actual knowledge of the product's defect, or if Plaintiffs are unable to recover a judgment they obtain against Ford, Autoliv, or TK Holdings, Inc." R. 20 at 5-6.

Those arguments do not amount to a reasonable possibility of recovery against Piemonte Ford. As *Poulos* explained, although the exercise is predictive, the prediction

8

must be premised on the *current* allegations, not on speculation that "some facts might turn up." 959 F.2d at 74. A possibility need not be premised on much, but a *reasonable* possibility does require some *reason* to believe that Piemonte Ford will re-appear in the case. With regard to the § 2-621(c) grounds, the record simply does not disclose any reason for believing that Piemonte Ford will be subject to suit. With regard to the possibility of Ford being financially unable to satisfy a judgment, in the reply brief, Plaintiffs cite and reproduce Ford's management discussion of risk factors in its 2009 10-K (as excerpted into the company's annual report). R. 20 at 9 (citing annual report at 56). But that does not take into account the many other positive statements, including the upgrades in Ford's credit ratings and the anticipated pre-tax profitability, Report at 53, 55, and beyond those predictions, the 2009 *actual* net income of $2.7 billion, Report at 21.[4] At this time, there is insufficient grounds to find a reasonable possibility that Defendants cannot satisfy a judgment against them.

It is true that some federal-court decisions have relied on the conditional nature of § 2-621 dismissals as a basis for remanding to state court. *E.g.*, *Kopitke v. Depuy Orthopaedics*, 2011 WL 856865 (N.D. Ill. Mar. 8, 2011); *Scheinman v. BMW*, 2010 WL 3937489, at *3 (N.D. Ill. Sept. 30, 2010) (plaintiff alleged that the Illinois seller was also engaged in, among other things, designing and manufacturing the defective vehicle); *Laroe v. Cassens & Sons*, 472 F. Supp. 2d 1041, 1050-53 (S.D. Ill. 2006) (plaintiff alleged that the Illinois seller had actual knowledge of the defect). But here

---

[4] It is also unclear whether a Ford car dealership would be able to satisfy a judgment if Ford itself were unable to do so.

9

Plaintiffs do not allege that Piemonte Ford is covered by any of the § 2-621(c) grounds, and in any event, *Poulos* requires application of the reasonable possibility test to each particular case. Under Plaintiffs' view of fraudulent joinder, no case involving a § 2-621 dismissal would be removable, no matter the remoteness of the possibility of recovery against the non-diverse Illinois distributor. That view does not square with the fraudulent joinder test adopted by *Poulos*. Sometimes the possibility of recovery will be reasonable, thus requiring remand; sometimes it will not be reasonable, and diversity jurisdiction applies. The latter is the case here.

### III.

Plaintiffs' motion to remand [R. 15] is denied. The Court will set a status hearing and require that the parties file a Joint Initial Status Report in advance of that hearing.

ENTERED:

_____
Honorable Edmond E. Chang
United States District Judge

Date: April 19, 2011